UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Tammy Walters,                                             Civil No. 10-1935 (RHK/FLN)

      Plaintiff,

      v.                                                              **REPORT AND
                                                                  RECOMMENDATION**

Michael J. Astrue,
Commissioner of Social Security,

      Defendant.

---

Gerald S. Weinrich for Plaintiff
Lonnie F. Bryan, Assistant United States Attorney, for the Government

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on the Plaintiff's and Defendant's cross motions for Summary Judgment. (ECF Nos. 9, 17.) The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72, and this Court has jurisdiction over the claim pursuant to 42 U.S.C. § 405(g).

In this action, Plaintiff Tammy Walters ("Plaintiff") seeks judicial review of the final decision of the defendant, Commissioner of Social Security, denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423. For the reasons set forth below, the Court recommends that Plaintiff's Motion for Summary Judgment be denied and that the decisions of the Commissioner be **AFFIRMED** and the case be **DISMISSED WITH PREJUDICE**.

### I. PROCEDURAL HISTORY

On November 7, 2006, Plaintiff filed an application for disability insurance benefits. (Tr. 144-49.) Plaintiff alleged disability beginning as of March 24, 2006. (Tr. 144.) Plaintiff's application was denied initially on February 27, 2007 and also denied on reconsideration on April 13, 2007. (Tr. 67, 70.) Plaintiff then filed a request for a hearing. An initial administrative hearing was conducted on March 11, 2009 in Rochester (Tr. 25-46). A second supplemental hearing was held on June 2, 2009 in Minneapolis. (Tr. 47-66.) On July 27, 2009, the administrative law judge (ALJ) issued an unfavorable decision, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 12-24.) On March 24, 2010, the Appeals Council denied the Plaintiff's request for review. (Tr. 1-5.)

## II.  FACTS

### a. Background

Plaintiff was forty-nine years old on the date of the ALJ's decision. (*See* Tr. 144.) She has limited education, having dropped out of school in the tenth grade. (Pl.'s Mot. Summ. J. 3; *see also* Tr. 61, 442.) Plaintiff never received a GED (general educational development or general equivalency diploma). (Tr. 61, 442.)

Plaintiff worked as a printer at Technigraph Corporation for 29 years, from 1977 until 2006. (Tr. 31, 262.) Robert A. Brezinski, a vocational consultant, classified Plaintiff's past relevant work as a printer as requiring medium exertion and involving skilled tasks with transferable skills in machine operation. (Tr. 268.) Juletta M. Harren, another vocational consultant, described the same work as requiring light-to-heavy exertion and involving semi-skilled tasks with no transferable skills. (Tr. 270.) Plaintiff testified that she stopped working due to a back injury (Tr. 33-34) that allegedly occurred in 2003.[1] (Tr. 403, 405-07, 437.) After

---

[1] Plaintiff also alludes to an injury sustained in 2005. (Tr. 436, 557.) This 2005 injury, however, was not discussed in either of the medical examinations discussed below. Both medical examinations were conducted after 2005. (See Tr. 403-407, 437.)

this injury, Plaintiff returned to work, but with a series of work restrictions suggested by her doctor, including: lifting restriction of twenty pounds, and not too frequent bending, twisting, squatting, crawling and climbing. (Tr. 33-34, 438.) Plaintiff was terminated from her position at Technigraph in either March or April 2006. (Tr. 31, 33, 404, 557.) Technigraph allegedly terminated Plaintiff because it was no longer able to retain her consistent with her physician's recommended medical restrictions. (Tr. 33, 438, 557.)

Plaintiff is currently working at Fastenal in conjunction with Winona Occupational Rehabilitation Center (ORC). (Tr. 30, 611) Plaintiff works as a light packager. (Tr. 61.) She works thirty to thirty-five hours per week (Tr. 36) and earns approximately $10,000 annually. (Tr. 31.)

### b. Medical Evidence – Physical Impairments

In August 2006, Plaintiff saw Loren Vorlicky, M.D., for the purpose of an independent medical examination. (Tr. 403.) Plaintiff told Dr. Vorlicky that treatment for her alleged injuries included epidural steroid injections, physical therapy, and pain medications. (Tr. 403-04.) The physical therapy component of Plaintiff's treatment was concluded on June 6, 2006. (Tr. 404.) On physical examination, Dr. Vorlicky observed that Plaintiff had a normal gait with normal heel-and-toe walking. (Tr. 404.) Dr. Vorlicky observed that Plaintiff had a normal range of hip motion and ranges of forward flexion to her knees. (Tr. 404.) Dr. Vorlicky noted that sitting "straight leg raise" as well as "axial load and torsional stress to the lumbar spine" caused Plaintiff back pain. (Tr. 404.) Dr. Vorlicky recommended weight reduction, daily aerobic activities, and truncal strengthening as an approach to treating Plaintiff's back pain. (Tr. 407.) Dr. Vorlicky concluded that no restrictions were necessary as a result of the May 6, 2003 injury except a possible 30-pound lifting restriction. (Tr. 407.)

In October 2006, Plaintiff saw her treating physician, Timothy Harbst, M.D., for ongoing lower back pain. (Tr. 437.) Dr. Harbst noted that her pain was related to a work injury that occurred on May 6, 2003. (Tr. 437.) Dr. Harbst stated that the "mechanism of the injury was repetitive bending, twisting, and lifting." (Tr. 437.) Dr. Harbst indicated that Plaintiff had permanent work restrictions dating back to 1995, limiting Plaintiff to light work that allowed changing positions as needed for comfort, and no more than occasional bending, twisting, squatting, crawling, and climbing. (Tr. 437.) During the examination, Plaintiff rose from a seated position without difficulty, moved about the room freely, and demonstrated intact sensory response and reflexes in her lower extremities. (Tr. 437.) In his report, Dr. Harbst referenced a magnetic resonance imaging (MRI) scan from March 2006. The MRI showed some lumbar degenerative changes and lumbar disc degeneration, as well as some lumbar bulging. (Tr. 437.) Following the October 2006 exam, Dr. Harbst did not change his opinion as far as Plaintiff's ongoing symptoms from her work injury. (Tr. 437.) Dr. Harbst also reiterated his opinion as to the necessity of Plaintiff's work restrictions. (Tr. 437.) Dr. Harbst concluded that the chronic lumbosacral pain was musculoskeletal in nature, and noted that he did not sense that Plaintiff's symptoms were due to nerve root entrapment. (Tr. 437.)

### c. Medical Evidence – Mental Impairments

In October and November 2006, Stephen Porter, Ph.D., conducted an Adult Disability/Neuropsychology evaluation of Plaintiff. (Tr. 436, 442-46.) Dr. Porter noted a previous physical diagnosis of chronic lumbrosacral pain that is musculoskeletal in nature. (Tr. 436, 442.) During evaluation Plaintiff complained of difficulty standing, walking, and lifting

items like groceries. (Tr. 436.) Dr. Porter noted Plaintiff received treatments including physical therapy, a home exercise program, and medications. (Tr. 436, 442.)

Plaintiff told Dr. Porter that she has "a severe reading disability" and dropped out of high school in the tenth grade. (Tr. 436.) Plaintiff said that her reading problem was exacerbated when Technigraph introduced computerization. (Tr. 436.) Dr. Porter conducted cognitive testing on Plaintiff. According to Dr. Porter's analysis, the testing showed Plaintiff had weakness in verbal ability, cognitive processing, cognitive efficiency, memory, and planning and judgment. (Tr. 443-44.) Plaintiff fared only slightly higher in nonverbal reasoning, and problem solving. (Tr. 444.) According to Dr. Porter, the higher scores in nonverbal reasoning and problem solving are "best…viewed as an isolated splinter skill…." (Tr. 444.) Plaintiff scored similarly low on the ONET Ability Profiler. (Tr. 444-45.) ONET was developed by the Department of Labor and is designed to measure "skills aptitudes…considered…the essential functions" of workforce jobs. (Tr. 444.) On a measure of overall intellectual ability, Plaintiff scored at approximately a third-grade level. (Tr. 444.) Dr. Porter concluded that Plaintiff functions in the mild ranges of mental retardation with borderline intellectual skills. (Tr. 444.) Dr. Porter opined that Plaintiff's limited intellectual skills present a barrier to maintaining employment in a competitive work environment. (Tr. 444.)

In February 2007, Diana Thomas, Ph. D. examined Plaintiff and evaluated her mental condition. (Tr. 557-60.) Plaintiff reported successful performance of daily activities, including: dressing, bathing, eating, working at a sheltered workshop, and engaging in light housekeeping chores. (Tr. 558.) On the date of her examination, Plaintiff was punctual, friendly, coherent, and generally cooperative. (Tr. 558.) She displayed fairly good attention and concentration. (Tr. 558.) She was adequate in performing basic arithmetic calculations, albeit with some

difficulty with division problems. (Tr. 558.) She had poor delayed recall, but Dr. Thomas noted that her long-term memory appeared well preserved. (Tr. 558.) Dr. Thomas stated that Plaintiff struggles with abstract reasoning. (Tr. 559.) Dr. Thomas conducted intelligence testing on Plaintiff. (Tr. 559-60.) The testing showed a verbal intelligence quotient (IQ) of 69, a performance IQ of 81, and a full scale IQ of 73. (Tr. 559-60.) Using this data, Dr. Thomas placed Plaintiff in the borderline range of intellectual functioning. (Tr. 559-60.)

Dr. Thomas concluded that Plaintiff is capable of attending to and concentrating on information presented to her. (Tr. 560.) Dr. Thomas further opined that Plaintiff may have difficulty comprehending complex information due to her poor verbal skills. (Tr. 560.) Dr. Thomas stated that Plaintiff, however, is very observant of her physical environment and can perceive relationships between various aspects therein. (Tr. 560.) Dr. Thomas described Plaintiff's mood as "moderately depressed," but noted that it "does not appear to significantly impact her overall functioning." (Tr. 560.) Dr. Thomas concluded that Plaintiff is able to persist in well-learned tasks and can relate appropriately to peers and supervisors. (Tr. 560.)

### d. Other Evidence

On January 4, 2008, Rachel Besaw, a rehabilitation specialist, wrote a letter on behalf of Plaintiff. Plaintiff is a client of Ms. Besaw through Winona ORC. (Tr. 611.) Ms. Besaw stated that Plaintiff's back injury limited her ability to bend, twist, squat, crawl, or climb. (Tr. 611.) Ms. Besaw also noted Plaintiff scored relatively low on the General Intelligence Aptitude Scale, placing her in the category of Mild Mental Retardation. (Tr. 611.) Ms. Besaw wrote that Plaintiff was working as a small parts packager at Fastenal, earning $6.15 per hour. (Tr. 611.) Plaintiff's job coaches reported that she did an excellent job. The coaches also reported that

Plaintiff was a concrete thinker who benefitted from additional direction and assistance, especially where she had a question. (Tr. 611.)

Ms. Besaw opined that Plaintiff's productivity rate was less than the 79% indicated by her established wage. Ms. Besaw stated that Plaintiff's actual productivity rate ranged between 15% and 55% depending on the job. (Tr. 611.) Ms. Besaw indicated that Plaintiff was not able to work an eight-hour shift because her stamina was limited by her physical injuries. (Tr. 611.)

Ms. Besaw further opined that Plaintiff needed significant assistance to adjust to changes in the workforce over the course of Plaintiff's nearly 30-year term at Technigraph. According to Ms. Besaw, Plaintiff was dependable and a hard worker, but not competitive because of her "limited understanding of the more complex tasks and her limited physical capabilities." (Tr. 611.) Ms. Besaw stated that Plaintiff would continue to work at Fastenal with continued assistance from job coaches. (Tr. 611.)

e. **Plaintiff's Testimony**

On March 11, 2009 and June 2, 2009, Plaintiff and her attorney appeared before ALJ Mary M. Kunz. (Tr. 25, 47.) Plaintiff testified as to pain in her back, shoulder, knees and feet. (Tr. 34-38, 52-53.) She further testified that doctors had placed no medical restrictions on her with respect to the shoulder, knee, or foot. (Tr. 44.) Plaintiff also testified that she had been treated for depression. (Tr. 38-39.) Plaintiff stated the depression causes some problems with concentration, but no problems relating with other people. (Tr. 38-39, 53.) She also stated that she had difficulty with reading and math. (Tr. 39-40.) Plaintiff testified that she has a driver's license, pays her own bills, and maintains her own checking account. (Tr. 40-41, 53-54.)

Plaintiff stated that she readied herself for work each morning, drove herself to work, and on her return, assisted her fiancé with light household labor. (Tr. 42-44, 54-55.)

Plaintiff testified that she had worked at Technigraph since 1977, but was terminated in 2006. (Tr. 31-33.) Plaintiff stated that following an injury, she was unable to resume her previous position because Technigraph could not accommodate her medical restrictions. (Tr. 33.) Plaintiff testified that she was currently working approximately thirty to thirty-five hours per week doing packaging (Tr. 30-31, 51), earning about $10,000 per year. (Tr. 31.)

### f. Medical Expert's Testimony

Dr. Andrew Steiner testified as an impartial medical expert at the June 2 hearing. (Tr. 56.) The ALJ asked Dr. Steiner to identify any medically determinable impairments that were documented in the record. Dr. Steiner reported the following: treatment for lower back pain with left lower extremity radiation; injuries in 1994 and 2003; mild degenerative disc disease with some osteoarthritic changes in the facets; migraninious headaches; foot pain and a neuroma formation in the right foot; right knee pain, possibly related to patella femoral syndrome; obesity; fatigue; depression and anxiety; adjustment disorder with depressed mood; and mild mental retardation. (Tr. 57-58.) The ALJ asked Dr. Steiner to opine as to whether the Plaintiff's impairments would meet or medically equal any relevant listing (under 20 C.F.R. Pt. 404, Subpt. P, App. 1). (Tr. 59.) Dr. Steiner, addressing the non-psychiatric conditions, testified that Plaintiff's impairments would not meet or equal any listed impairment. (Tr. 59, 60.) Dr. Steiner also stated that the documentation for the physical conditions was minimal. (Tr. 59.) With regard to work related limitations, Dr. Steiner suggested limiting the Plaintiff to occasional bending, twisting, stooping, kneeling, crawling, crouching, climbing, and balancing. (Tr. 59.)

Dr. Steiner stated there was no medical basis for a restriction requiring change of position. (Tr. 59.)

### g. Vocational Expert's Testimony

Juletta M. Harren testified as an impartial vocational expert at the June 2 hearing. (Tr. 60.) The ALJ posed a hypothetical question to Ms. Harren to consider a person including Plaintiff's vocational profile, who was a 49-year-old with a tenth-grade education. (Tr. 61-62.) The hypothetical person suffered from: degenerative changes in the lumbar spine; migraine headaches; foot neuromas; possible patella femoral syndrome in the right knee; obesity; fatigue; depression; anxiety; and borderline intelligence or mild mental retardation. (Tr. 62.) The hypothetical person was limited to: light work; lifting twenty pounds occasionally, ten pounds frequently; six hours of standing and walking with two hours sitting; not more than occasional bending, twisting, stooping, kneeling, crouching, crawling, climbing, or balancing. (Tr. 62.) The hypothetical person was further restricted to routine, repetitive, unskilled work, excluding an assembly belt or line. (Tr. 62.) Additionally, any potential job could not involve more than a third-grade level of reading, language, or math. (Tr. 62.)

On the basis of this hypothetical, Ms. Harren testified that Plaintiff's previous employment involved a conveyor line, and was thus excluded. (Tr. 63.) Ms. Harren testified that given the ALJ's limitations, there were other jobs in the national economy where Plaintiff could work. (Tr. 63.) Ms. Harren opined that the packing area would make the most sense for this individual, and in Minnesota there were 7,500 compatible packaging positions. (Tr. 63.) Following Ms. Harren's assessment, the ALJ added to the hypothetical the further limitation of requiring the individual to change positions briefly after approximately one hour. (Tr. 64.) Ms.

Harren stated that this added limitation would not significantly reduce the number of jobs. (Tr. 64.) The ALJ then added yet another limitation: requiring the individual to walk every five to fifteen minutes. (Tr. 64.) Ms. Harren stated that she was unsure if there was a job that would allow for the walking, noting that along with the other limitations this would be a "very difficult residual functional capacity." (Tr. 64.)

The ALJ asked Ms. Harren to comment on the "15% to 55%" productivity rate alluded to by Ms. Besaw. Ms. Harren stated that the "15% to 55%" ratio did not comport with Plaintiff's earnings records. (Tr. 65.)

### h. The ALJ's Decision

To determine whether Plaintiff was disabled, the ALJ followed the five-step sequential process outlined in 20 C.F.R. § 404.1520. In analyzing the first step, the ALJ determined that Plaintiff had not engaged in substantial gainful employment since the alleged onset of her disability. (Tr. 17.)

The next step in the evaluation is to determine whether Plaintiff had a severe impairment, defined as an impairment that significantly limits one's physical or mental ability to do basic work activities. 20 C.F.R. § 1520. The ALJ found that Plaintiff was severely impaired by: degenerative disc disease of the lumbar spine; myofascial pain versus sacroilits; migraine headaches; neuroma surgeries on the right foot; possible patellofemoral syndrome of the right knee; obesity; depression; anxiety; and borderline intellectual functioning. (Tr. 17.)

The next step in the evaluation requires a comparison of the claimant's severe impairment with the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ determined that Plaintiff's physical impairments, or combination of impairments, were not

characterized by findings which met or equaled the criteria of a listed impairment. (Tr. 18.) The ALJ also analyzed the Plaintiff's mental impairment.

To evaluate the Plaintiff's mental impairments, the ALJ considered the Disability Evaluation Under Social Security, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04. To satisfy these criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or, repeated episodes of decompensation, each of extended duration. The ALJ found that Plaintiff was able to perform many activities of daily living on an independent, sustained, useful and routine basis. (Tr. 18.) In social functioning, the ALJ found that Plaintiff has no difficulties interacting with examining or treating sources. (Tr. 18.) The ALJ further found that Plaintiff maintains stable interpersonal relationships, goes into public, and shows no history of altercations or social isolation. (Tr. 18.)

In terms of concentration, persistence or pace, the ALJ noted that Plaintiff has moderate difficulties. (Tr. 18.) The ALJ also noted that despite these difficulties, Plaintiff is capable of passing a driving examination, working, handling her money, and generally seems fully oriented, with a logical, goal-directed thought process. (Tr. 18.)

As for decompensation, the ALJ reported that Plaintiff has experienced no episodes. (Tr. 18.) Additionally, the ALJ found that the Plaintiff's borderline intellectual functioning did not rise to the necessary level of impairment because it was not accompanied by deficits in adaptive functioning. Although the ALJ acknowledged the Plaintiff's low IQ, the ALJ determined that the evidence of normal day-to-day functioning, social interactions, and past work experience outweighed the borderline intellectual functioning. (Tr. 19.)

The last two steps of the evaluation require the ALJ to determine whether the Plaintiff has the residual functional capacity (RFC) to perform her past relevant work, or lastly, any other work existing in significant numbers in the national economy. The ALJ considered the entire record, concluding that the Plaintiff has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) except involving brief change of position hourly, and no more than occasional bending, twisting, stooping, kneeling, crouching, crawling, climbing or balancing. (Tr. 19.) Plaintiff's RFC was further limited to routine, repetitive, unskilled work that is not rapidly paced and does not require more than third-grade levels of language or math. (Tr. 19.) The ALJ stated that she considered all symptoms to the extent they could reasonably be accepted as consistent with the objective medical evidence and other evidence in making this finding. (Tr. 19.) Based on this RFC and the testimony of the vocational expert, the ALJ concluded Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (Tr. 23.) Based on the foregoing, the ALJ entered a finding of "not disabled." (Tr. 23.)

### III.  STANDARD OF REVIEW

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g); *see also Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998); *Gallus v. Callahan*, 117 F.3d 1061, 1063 (8th Cir. 1997); *Wilson v. Sullivan*; 886 F.2d 172, 175 (8th Cir. 1989). Substantial evidence means more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Jackson v. Apfel*, 162 F.3d 383, 385 (8th Cir. 1998); *Black v. Apfel*; 143 F.3d 383, 385 (8th Cir. 1998). In determining whether evidence is substantial, a court must also consider whatever is in the record that fairly

detracts from its weight. *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989) (*citing Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).

A court, however, "may not reverse merely because substantial evidence would have supported an opposite decision." *Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000) (internal citations omitted); *see also Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1996). Our review of the ALJ's factual determinations is therefore deferential, and this court will not re-weigh the evidence, nor review the factual record de novo. *See Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997); *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996).

## IV. CONCLUSIONS OF LAW

### a. The ALJ properly directed the vocational expert to consider Plaintiff's borderline intellectual functioning in determining Plaintiff's residual functional capacity.

Plaintiff charges that the ALJ did not properly factor Plaintiff's borderline intellectual functioning into the ALJ's hypothetical to the vocational expert ("VE"). Borderline intellectual functioning is a significant non-exertional impairment that must be considered by a vocational expert. *Muncy v. Apfel*, 247 F.3d 728, 735 (8th Cir. 2001) (*citing Holz v. Apfel*, 191 F.3d 945, 947 (8th Cir. 1999)). When a hypothetical question does not encompass all relevant impairments, a vocational expert's testimony does not constitute substantial evidence. *Hunt v. Massanari*, 250 F.3d 622, 626 (8th Cir. 2001). A hypothetical question is properly formulated if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ. *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005) (*citing Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001)). The judge's hypothetical question must include all of Plaintiff's

impairments which the judge found credible. *Piergras v. Chater*, 76 F.3d 233, 237 (8th Cir. 1996) (*citing Chamberlain v. Shalala*, 47 F.3d 1489, 1495 (8th Cir. 1995)).

Plaintiff's position is unsupported by the record. The ALJ considered all credible impairments in forming her hypothetical. First, in forming her hypothetical to the VE, the ALJ explicitly referenced Plaintiff's mental impairments. The ALJ stated that "this individual is impaired by a number of conditions, including…mental impairments, which have been diagnosed as depression, anxiety, and adjustment disorder, and borderline intelligence versus mild mental retardation." (Tr. 62.) The ALJ described the mental impairments further, stating that there were "also allegations of…problems with attention and concentration." (Tr. 62.) The ALJ instructed the VE further, restricting the individual to "routine, repetitive, unskilled work," in part "[b]ecause of the allegations of…the mental impairments." (Tr. 62.) Finally, in explicit reference to Dr. Porter's intelligence assessment (Tr. 444), the ALJ limited the VE's consideration to work "not involv[ing] more than a third grade level of reading, language, or math." (Tr. 62.) The record demonstrates that the ALJ presented the VE with a reasonably complete picture of Plaintiff's mental impairments.

Despite this level of detail, Plaintiff argues that the ALJ's hypothetical "did not take into consideration all of the potential limitations" supported by the record. Plaintiff makes specific reference to a supposed "requirement" of "one-on-one" supervision. (Pl.'s Mot. Summ. J. 8.) Neither the testimony of the VE, nor the letter submitted by Plaintiff's rehabilitation specialist, Ms. Besaw, contains a requirement of one-on-one supervision. Ms. Besaw's letter stated that Plaintiff needs "someone to help her if there is a question" and that Plaintiff could "benefit from…additional direction and assistance." (Tr. 611.) These statements cannot be reasonably interpreted to impose a requirement of one-on-one supervision.

14

Further, it is in the ALJ's province to determine the credibility of expert testimony. The ALJ is to consider evidence that is credible when forming a hypothetical. *See Piepgras*, 76 F.3d at 237. Where substantial evidence supports an ALJ's credibility determination, the determination will not be overturned. *See Reynolds v. Chater*, 82 F.3d 254, 258 (8th Cir. 1996). The ALJ considered Ms. Besaw's letter, but did not give it significant weight. Alternative credible testimony from Drs. Porter and Thomas contained no suggestion that a one-on-one limitation was necessary. To the extent the ALJ did not regard Ms. Besaw's assessment as credible, she could exclude it from her hypothetical. Assuming Ms. Besaw's letter contained an implicit "one-on-one" requirement, the ALJ need not include it as credible evidence in the face of alternative testimony from medically qualified examiners. Given the evidence, the ALJ's hypothetical properly advised the VE to consider Plaintiff's mental impairments.

    **b. The ALJ's decision that Plaintiff is not disabled is supported by substantial evidence in the record.**

The claimant has the ultimate burden of establishing disability under the Act. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). The ALJ follows a five-step evaluation to determine whether a claimant is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see* 20 C.F.R. § 404.1520.

Plaintiff does not challenge the ALJ's decisions in steps one through three, discussed *supra* pp. 11-12. Plaintiff's challenges are limited to the final two steps: the ALJ's determination of residual functional capacity, and whether Plaintiff was capable of performing her previous work or any other work existing in significant numbers in the national economy.

    **i. Substantial evidence supports the ALJ's residual functional capacity finding.**

Residual functional capacity (RFC) is what a claimant can do despite his limitations. *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008); 20 C.F.R. § 404.1545. RFC is determined at step four, where the burden rests on the claimant. *See Krogmeier*, 294 F.3d at 1022. The ALJ's responsibility is to determine the claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations. *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007); *see also* 20 C.F.R. § 404.1545(a)(3).

In determining Plaintiff's RFC, the ALJ considered: Plaintiff's testimony and symptoms; medical records; psychological test records; Plaintiff's activities of daily living; Plaintiff's work history; and expert testimony. The ALJ determined Plaintiff's RFC was performing light work "except involving a brief change of position hourly, no more than occasional bending, twisting, stooping, kneeling, crouching, crawling, climbing or balancing, and routine repetitive unskilled work, which is not rapidly paced and does not require more than third-grade levels of language or math." (Tr. 19.) The medical component of this RFC is built almost directly on the testimony of Dr. Steiner and finds further support from the examination by Dr. Harbst. Indeed, Plaintiff does not contest the medical component of the RFC.

Plaintiff argues that in developing the mental component of the RFC, the ALJ did not consider the *extent* of Plaintiff's borderline intellectual functioning. As in her hypothetical to the VE, the ALJ shows a complete grasp of the extent of Plaintiff's mental impairments. The mental limitations of the RFC reflect the ALJ's evaluation under the standards set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1. In assessing the mental limitations of the RFC, the ALJ specifically considered the evidence submitted by Drs. Thomas and Porter. (Tr. 22.) This evidence included: aptitude scales that specifically quantified Plaintiffs mild mental retardation; evidence

regarding Plaintiff's daily life and social functioning; and evidence of Plaintiff's work history. (Tr. 18-19.) This evidence showed a woman with approximately a third-grade level of intellectual functioning (Tr. 444) who might have difficulty understanding complex information. (Tr. 560.) Despite this level of function, the evidence also showed that Plaintiff was very observant of her environment, was able to persist in well-learned tasks, and was able to relate appropriately to peers and supervisors. (Tr. 560.) The ALJ's characterization of Plaintiff's mental RFC is supported by the testing of Dr. Porter as well as the examination by Dr. Thomas. Plaintiff does not challenge the ALJ's reliance on Drs. Porter and Thomas. The record contains substantial evidence to support the ALJ's characterization of Plaintiff's mental limitations.

Plaintiff further argues that the ALJ "did not fully understand the information" submitted by Ms. Besaw. (Pl.'s Mot. Summ. J. 9.) Plaintiff explains that the ALJ erred in considering Ms. Besaw's opinions on Plaintiff's productivity only in the context of physical impairments, neglecting the mental component. (*See* Pl.'s Mot. Summ. J. 9; Tr. 21.) Regardless of the context in which the ALJ considered Ms. Besaw's letter, the ALJ found that the basis for Ms. Besaw's opinions on Plaintiff's allegedly reduced productivity was "not clear." (Tr. 21.) Neither Ms. Besaw nor Plaintiff put forth any evidence or context to give meaning to Ms. Besaw's opinion that Plaintiff's productivity is between 15% and 55%. Further, the ALJ was at liberty to minimize the weight of Ms. Besaw's opinion when faced with contradictory evidence from the VE. *See Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) ("[T]he weight given to testimony is for the fact-finder to decide in the first instance."). Regardless of whether the alleged reduced productivity was due to physical or mental impairments, the ALJ found credible the testimony of the VE stating that the wages reflected on Plaintiff's earnings record were inconsistent with the reduced level of productivity. (Tr. 21-22.)

Plaintiff claims the record was lacking in evidence outlining the extent of Plaintiff's mental impairments. Plaintiff asks for remand to address the alleged deficiency of the record. The ALJ has no duty to develop the record where the claimant has not put forth sufficient evidence to establish a mental impairment. *See Brockman v. Sullivan*, 987 F.2d 1344, 1348 (8th Cir. 1993). Absent unfairness or prejudice in the ALJ's development of the record, remand is not appropriate. *See Onstad*, 999 F.2d at 1234. If the record is indeed lacking in this regard, it is solely due to Plaintiff's failure to provide such evidence. Plaintiff had opportunities to support her claim at two hearings. The ALJ left the record open for the purpose of receiving additional evidence at the end of the first hearing. (Tr. 45.) The ALJ then accepted additional evidence at the second hearing three months later. (Tr. 49-50.) The ALJ considered the extent of Plaintiff's mental impairments to the extent the record contained credible evidence to consider. The ALJ's actions in this regard show neither unfairness nor prejudice.

As noted in the ALJ's decision, the Plaintiff was afforded the "benefit of all doubt" in formulating the RFC. (Tr. 22.) The record contains substantial evidence to support the ALJ's finding of Plaintiff's RFC.

### ii. Substantial evidence supports the ALJ's finding that Plaintiff could perform other work existing in significant numbers in the national economy.

The ALJ considered Plaintiff's past relevant work and concluded that Plaintiff was unable to perform this work because the demands of the job exceeded Plaintiff's RFC. (Tr. 22.) This finding accords with the VE's testimony. (*See* Tr. 63.)

To determine whether a successful adjustment to other work is possible, the ALJ must consider the claimant's RFC, age, education, and work experience. *Kerns v. Apfel*, 160 F.3d 464, 466 (8th Cir. 1998); *see also Coffin v. Sullivan*, 895 F.3d 1206, 1210 (8th Cir. 1990); 20

C.F.R. § 404.1520(g)(1).  Where a claimant has a severe mental impairment, the ALJ must also consider testimony from a VE to determine whether a claimant may adjust to other work.  *See King v. Astrue*, 564 F.3d 978, 979 (8th Cir. 2009).  The Commissioner may rely on a VE's response to a properly formulated hypothetical question to show that jobs exist in significant numbers that a person with the claimant's RFC can perform.  *Guilliams*, 393 F.3d at 804; *see also* 20 C.F.R. § 404.1566.

To determine to what extent Plaintiff's limitations eroded her unskilled light occupational base, the ALJ asked the VE whether jobs exist in the national economy, considering Plaintiff's age, education, work experience and RFC (which included mental limitations).  The ALJ's hypothetical was properly formulated and considered all relevant limitations.  *See supra* pp. 14-16.  The VE testified that given all these factors, the individual would be able to perform the requirements of representative occupations such as light packager. (Tr. 63.)  The VE testified that 7,500 such jobs were available in the Minnesota regional economy.  (Tr. 63.)  Based on the VE's testimony, as well as the Plaintiff's age, education, work experience, and RFC, the ALJ properly concluded that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  Given the evidence, there was substantial evidence on the record to support the ALJ's finding.

## V.  RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (ECF No. 9) be **DENIED**;

2. Defendant's Motion for Summary Judgment (ECF No. 17) be **GRANTED**;

3.  The Commissioner's decision be **AFFIRMED** and the case be **DISMISSED WITH PREJUDICE**; and

4.  **JUDGMENT BE ENTERED ACCORDINGLY**.


DATED: March 9, 2011               *s/ Franklin L. Noel*
                                    FRANKLIN L. NOEL
                                    United States Magistrate Judge

   Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **March 23, 2011**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

   This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.